IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MONARCH GEMS, J.B. & S. BROS., )
BHARGOVI, and KIRAN EXPORTS, )
)
    Plaintiffs, )
)
    v. ) 04 C 7664
)
MALCA-AMIT USA, L.L.C. and U.S. )
BANCORP, )
    Defendants. )

## MEMORANDUM AND ORDER

The plaintiffs, four partnerships organized under the Indian Partnership Act, contend that defendants Malca-Amit and U.S. Bancorp are liable, under various contract and tort theories, for the loss of diamonds worth over $600,000 that the defendants allegedly agreed to deliver to a Chicago jeweler. U.S. Bancorp and Malca-Amit USA have filed separate motions to dismiss. For the following reasons, U.S. Bancorp's motion is denied and Malca-Amit USA's motion is granted.

I.    **Background**

The following facts are drawn from the second amended complaint and will be accepted as true for the purposes of the defendants' motions to dismiss. Plaintiffs are diamond merchants located in India. In December of 2003, they contracted with Lemuir Express, an Indian corporation engaged in the business of transporting goods, to deliver several shipments of diamonds from India to a consignee in Chicago. Lemuir Express thus issued a series of non-negotiable air waybills covering the shipments.[1]

---

[1] The waybills are attached to the plaintiffs' complaint as exhibits and are thus properly before the court. The copies attached to the complaint do not include the reverse side of the

The front of the waybills state that the corresponding parcels "will be carried through Secured Delivery System of The Malca Amit Group of Companies." The reverse side of the waybills is marked "Terms and Conditions" and states that "'The Malca Amit Group of Companies' includes all those companies who are members of the Malca Amit Group of Companies' whose names appear on a list published from time to time and kept on file . . . . Each member of the Malca Amit Group of Companies is an independent corporate or other business entity and is not liable for the debts or obligations of any other member or agent of the Malca Amit Group of Companies." Terms and Conditions at § 1.2.

In addition, the Terms and Conditions provide that the "Customer agrees that any of the companies, persons or entities and their agents, servants, or employees hired by Malca Amit to fulfill its obligations under this contract . . . shall have the benefit of every exemption from and limitation of liability and defense to which Malca Amit is entitled. *Id.* at § 1.5.1. Finally, the Terms and Conditions contain choice of law and forum selection clauses which provide that:

> The laws and competent courts of the state or country in which the Customer executed this contract to the exclusion of the laws of any other state or country shall govern the validity of this contract, the construction of its terms, and the interpretation of the rights and duties of the parties hereto. The competent courts of said state or country shall have exclusive jurisdiction to the exclusion of all other courts to determine any claim, dispute, or disagreement arising under or in connection with this contract, whether raised by way of claim, counter-claim, third-party claim, interpleader, or in any other manner whatsoever.

*Id.* at § 12.1.

---

waybills. The court obtained legible copies of the reverse side from the parties and will consider the reverse of the waybills in connection with the motion to dismiss as the plaintiffs attached the waybills to their complaint and have stipulated that the missing reverse sides were, in fact, present on the reverse sides of the original waybills. To ensure that the record is complete, the parties shall ensure that copies of the reverse side of the waybills are filed with the court by May 16, 2005.

Pursuant to the waybills, Lemuir Express arranged for carriage of the shipment from India to the United States. Malca Amit USA accepted the diamonds once they were in the United States so it could deliver them to a consignee in Chicago. Lemuir Express and Malca Amit USA are connected because they entered into a confidential agency agreement. Under that agreement, for deliveries to the United States, Lemuir Express was required to arrange for carriage from India to New York, whereupon Malca Amit USA, acting as Lemuir Express' delivery agent, would complete the delivery to the consignee. With respect to the shipments of diamonds at issue in this lawsuit, the diamonds never made it to the consignee, and this lawsuit followed.

## II. Discussion

### A. U.S. Bankcorp's Motion to Dismiss

#### 1. Standard on 12(b)(6) Motion to Dismiss

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. *See, e.g., McMath v. City of Gary*, 976 F.2d 1026, 1031 (7th Cir. 1992). Dismissal is properly granted only if it is clear that no set of facts which the plaintiff could prove consistent with the pleadings would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, the court is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. *Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992).

## 2. The Economic Loss Doctrine

The plaintiffs allege that U.S. Bancorp was negligent when it acted as a consignee for the plaintiffs' diamonds. U.S. Bancorp seeks to dismiss the plaintiffs' negligence claims, contending that they are barred by the economic loss doctrine, which prohibits recovery in tort for purely economic losses, subject to certain limited exceptions. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69 (Ill. 1982) (defining the economic loss doctrine in the context of a products liability action); *see also Congregation of the Passion v. Touche & Ross Co.*, 159 Ill.2d 137, 159-60 (Ill. 1994) (extending the reach of the economic loss doctrine to the context of service agreements where the remedy sought by the plaintiff stems from contractual liability).

One of the exceptions is the rule that a plaintiff may recover despite the economic loss doctrine if the tort committed by the defendant is based on an extracontractual duty. *See Congregation of the Passion*, 159 Ill.2d at 162. The plaintiffs argue that U.S. Bancorp owed them an extracontractual duty separate and apart from their contractual relationship because consignees (like U.S. Bancorp) have a fiduciary duty to consignors (like the plaintiffs). According to the plaintiffs, because their negligence claim is predicated on a breach of fiduciary duty, the economic loss doctrine is inapplicable.

The court agrees. In *Congregation of the Passion*, which is at the heart of the plaintiffs' arguments, the Illinois Supreme Court stated that the economic loss doctrine is "applicable to the service industry only where the duty of the party performing the service is defined by the contract that he executes with his client. Where a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Id.* The court went on to hold that accountants owe their clients duties not only pursuant to services contracts

but also because they are members of a skilled profession and provide additional intangible benefits to their clients. *Id.* (because accountants, like attorneys, are skilled professionals, they owe their clients a duty to exercise "reasonable professional competence . . . independently of any contract"). It then concluded that the "intangible" duty of exercising reasonable professional competence exists regardless of whether it is memorialized in the parties' contract because a claim for negligence is based on an extracontractual duty. *Id.* at 164-65.

Here, U.S. Bancorp contends that it did not have an extracontractual duty to the plaintiffs because the duties they owed to the plaintiffs – whether fiduciary or contractual – existed solely due to the existence of the parties' contract. In other words, according to U.S. Bancorp, without the contract covering the diamonds, they would not have owed the plaintiffs any duties at all. Thus, U.S. Bancorp concludes that its fiduciary obligation to the plaintiffs is tied to the contract and cannot, by definition, be extracontractual. *See Harger v. Spirit Airlines, Inc.*, No. 01 C 8606, 2003 WL 21218968 at *10 (N.D. Ill. May 22, 2003) (tort claim based on the alleged negligent loss of luggage was not extracontractual because absent the contract of carriage, the airline had no duty to transport its passengers' baggage in the first place)

In Illinois, however, bailment is a special relationship which gives rise to duties that arise independent of a contractual relationship. Thus, as the Illinois Supreme Court explained well over 100 years ago:

> [N]othing is better settled than that in many contracts, especially those which establish peculiar relations between the parties, as, those of confidence and trust, the law silently annexes certain conditions, and imposes mutual obligations and duties, which are not all, in express terms, provided for in the contract, yet in contemplation of law, they are nevertheless regarded as part of the contract, and the non-performance of them may, in an action on the contract, be assigned as a breach thereof. But while assumpsit [i.e., a contract claim] will certainly lie for a

> breach of these duties, it is equally well settled that case [i.e., a tort claim] will lie
> also. Strictly speaking, these duties arise ex lege out of the relation created by the
> contract. As familiar illustrations of this class of contracts, which give rise to an
> almost infinite variety of implied duties and obligations, may be mentioned those
> between client and attorney, physician and patient, carrier and shipper, and, in
> short, every species of bailment. In all these and analogous cases it is conceded
> case is a concurrent remedy with assumpsit for a breach of the implied duties
> growing out of any of these relations.

*Nevin v. Pullman Palace Car Co.*, 106 Ill. 222, 233 (Ill. 1883), *Mutual Service Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 616 (7th Cir. 2001) (following *Nevin*). Because the plaintiffs are claiming that U.S. Bancorp breached an obligation that did not arise from a contract, the *Moorman* doctrine does not apply. *See F.D.I.C. v. Miller*, 781 F.Supp. 1271, 1277 (N.D. Ill.1991) (Moorman doctrine did not bar breach of fiduciary duty action). U.S. Bancorp's motion to dismiss the plaintiffs' negligence claims is, therefore, denied.

### B. Malca-Amit's Motion to Dismiss

#### 1. Standard on 12(b)(3) Motion to Dismiss

On a motion to dismiss for improper venue based on a forum-selection clause, the plaintiff bears the burden of establishing that the venue it has chosen is proper. *See Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18(1972); *DeJohn v. The .TV Corp. International*, 245 F.Supp.2d 913, 920 (N.D. Ill. 2003). The court takes all the allegations in the complaint as true unless contradicted by the defendant's affidavit and may examine facts outside the complaint. *Promero, Inc. v. Mammen*, No. 02 C 1191, 2002 WL 31455970 at *7 (N.D. Ill. Nov. 1, 2002).

#### 2. The Forum Selection Clause

As Malca Amit USA correctly notes, "a party with a valid defense of improper venue is entitled to be dismissed from the suit." *Salton, Inc. v. Philips Domestic Appliances and Personal*

*Care B.V.*, 391 F.3d 871, 881 (7th Cir. 2004). Malca Amit USA contends that the waybills are "through" bills that govern transportation to India to the shipments' final destinations and that the claims against it should be dismissed for improper venue because the forum selection clause in the waybills fixes venue in India, where the waybills were executed. In response, the plaintiffs cite to state law provisions regarding venue despite the fact that they are now in federal court. They also contend that the forum selection clause is inapplicable due to language in the master agency agreement between Lemuir Express and the Malca Amit Group of Companies and because they have not brought suit under the waybills.

The forum selection clause in the master agency agreement applies to disputes between the "forwarding party" and the "delivering party." Agreement at ¶ 17. In this case, the "forwarding party" and the "delivering party" are Lemuir Express and Malca Amit USA, respectively. *Id.* at page 1. According to the plaintiffs, because they elected not to sue Lemuir Express, the forum selection clause is inapplicable.

This argument is a non-starter because the forum selection clause that is at the heart of Malca Amit USA's motion to dismiss is located on the waybills. The terms and conditions on the waybills state that the plaintiffs "agree[] that any of the companies, persons or entities and their agents, servants, or employees hired by Malca Amit to fulfill its obligations under this contract . . . shall have the benefit of every exemption from and limitation of liability and defense to which Malca Amit is entitled."

This provision extends the protections and immunities of a carrier to its agents and subcontractors and thus is a "Himalaya clause."[2] The court must use general principles of contract interpretation to determine the reach of the Himalaya clause. *See Norfolk Southern Railway Co. v. Kirby*, 125 S.Ct. 385, 396-97 (2004). The Supreme Court has recently stressed that Himalaya clauses are enforceable and that when the parties contemplate that various modes of transportation will be used to get an item from Point A to Point B and use corresponding language in their contract, a entity within the scope of the clause's language is an intended beneficiary of the clause. *Id.* Here, Malca Amit hired Malca Amit USA (which is another member of the Malca Amit Group of Companies) to fulfill its obligations under the contract, so Malca Amit USA is entitled to assert any defenses that Malca Amit could assert.

This brings the court to the forum selection clause. The waybills' terms and conditions provide that "[t]he laws and competent courts of the state or country in which the Customer executed this contract [India] to the exclusion of the laws of any other state or country shall govern the validity of this contract, the construction of its terms, and the interpretation of the rights and duties of the parties hereto. The competent courts of said state or country shall have exclusive jurisdiction to the exclusion of all other courts to determine any claim, dispute, or disagreement arising under or in connection with this contract."

For a forum selection clause to be effective, the language delineating the choice of forum must be "mandatory rather than permissive." *See Jockey Int'l, Inc. v. M/V Leverkusen Express*, 217 F.Supp.2d 447, 451 (S.D.N.Y. 2002). Mandatory forum selection clauses are presumptively

---

[2] The name is derived from the name of the steamship involved in an English case involving a similar clause. *See Adler v. Dixon (The Himalaya)*, 1 Q.B. 158 (1855).

valid and must be enforced unless it is unreasonable under the circumstances to do so. *Bremen v. Zapata Off-Shore Co.*, 407 U.S. at 15.

The contract here uses the word "shall" in the forum selection clause. The use of the word "shall" indicates that the forum selection clause in the agreement is mandatory and exclusive. *Bem I, L.L.C. v. Anthropologie, Inc.*, 2000 WL 816789 at *8 (N.D. Ill. Jun 22, 2000) (under Illinois law, courts interpret the word "'may" as permissive and "shall" as mandatory), *aff'd by* 301 F.3d 548 (7th Cir. 2002). Of course, India's laws may well apply to this dispute (a point which the court does not reach), but the parties have not addressed this issue or the ways in which Illinois and India's laws differ, so the court will forge on without a discussion of India's rules governing forum selection clauses.

A party seeking to avoid a mandatory forum selection clause must show that: (1) it is the result of fraud or overreaching; (2) the party will be deprived of his day in court as the result of the "grave inconvenience or unfairness of the selected forum"; (3) the party may be deprived of a remedy due to the "fundamental unfairness" of the chosen law; or (4) the clause contravenes a strong public policy of the forum state. *DeJohn v. The .TV Corp. International*, 245 F.Supp.2d at 921. The plaintiffs do not address any of these factors, and it is hard to see how they would be prejudiced from proceeding in India since they are Indian companies and gave the diamonds to Lemuir Express in India.

The court thus turns to the plaintiffs' final argument – that they did not file suit under the waybills, so the waybill's forum selection clause does not govern this case. According to the plaintiffs, they sued Malca Amit because the plaintiffs are a third party beneficiary of the contract

between Malca Amit and Lemuir Express. The plaintiffs explain that Malca Amit lost the diamonds, not Lemuir Express, so there is no need to bring Lemuir Express into this dispute.

Lemuir Express, however, appears to be ultimately responsible for the lost diamonds as it issued a through bill of lading. This type of bill of lading is issued in a foreign country to govern shipment throughout its transportation from abroad to its final destination in the United States. *Capitol Converting Equipment, Inc. v. LEP Transport, Inc.*, 965 F.2d 391, 394 (7th Cir. 1992). A through bill of lading means that the issuer is "responsible for the entire movement" of goods, so "[a] shipper may look to its chosen carrier, which then bears the responsibility for seeking compensation" from the agent which may ultimately be responsible for the lost goods. *Tempel Steel Corp. v. Landstar Inway, Inc.*, 211 F.3d 1029, 1030 (7th Cir. 2000). Thus, the plaintiffs cannot cut Lemuir Express out of this case by going after Malca Amit USA directly. *See American Patriot Ins. Agency, Inc. v. Mutual Risk Management, Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004) (a plaintiff cannot defeat a forum-selection clause by "suing an affiliate or affiliates of the party to the contract in which the clause appears").

In sum, the waybills include a contract between the plaintiffs and Lemuir Express. The contract, which contains a forum selection clause fixing venue in India, governs the plaintiffs' claims against Malca Amit arising from the missing diamonds. Accordingly, venue as to Malca Amit USA is not proper in this district. The court will, therefore, not reach the remaining arguments raised in Malca Amit USA's motion to dismiss.

### III. Conclusion

For the above reasons, U.S. Bancorp's motion to dismiss the plaintiffs' negligence claims [30-1] is denied, but Malca Amit USA's motion to dismiss for improper venue [40-1] is granted.

To ensure that the record is complete, the parties shall ensure that copies of the reverse side of the waybills are filed with the court by May 16, 2005.

DATE: May 4, 2005

_____
Blanche M. Manning
United States District Judge